Good morning. Jagdeep Sikh on behalf of Petitioner, this is Swindar Singh Rai. As the Court is aware, these are consolidated proceedings. So Mr. Rai is seeking review of both petitions. So as a result, I will try to address both petitions this morning unless the Court directs me otherwise. If it pleases the Court, I will first address Mr. Rai's eligibility for asylum. The Board of Immigration Appeals denied Mr. Rai's asylum application on the grounds that he was not credible. The BIA advanced two pivotal reasons for its decision that Mr. Rai was not credible. The first reason cited by the Board was that Mr. Rai used an alias and continued to use an alias for a two-and-one-half year period after he entered the United States, and he also used an alias at his initial asylum interview. Your Honors, this is simply incorrect, and I don't think this point is disputed at this time before the Court. The second reason advanced by the BIA for its decision is that Mr. Rai misrepresented to INS when he left India. Again, this is incorrect. Mr. Rai never did misrepresent when he left India, and again, I don't think this fact is disputed before the Court. He did enter initially under an alias, right? That's correct, Your Honor. And misrepresented how he got into the country? Your Honor, those were two separate transactions, yes. He entered in October of 1992 and at that time did not have proper documentation with him and misrepresented his identity. Then he misrepresented the date and manner of his entry at his asylum interview based on his asylum application when he was able to file his asylum application, and that happened in 1994, I believe. At what point did he tell immigration officials his true name and method of entry? Mr. Rai told INS his true name at the time he applied for asylum. So as a result, Mr. Rai's identity was never really an issue before INS or the Immigration Court, and in fact, I think the Immigration Court expressly stated his identity was not an issue. Mr. Rai did not actually tell INS about his manner of entry. INS discovered that because after he applied for asylum, they ran his fingerprints and they discovered that he had entered the United States actually in October of 1992 and not in 1994 as the application stated. So that fact was before the Immigration Court, which at that time Mr. Rai conceded that he did enter as INS alleged. It is our position that because the BIA's decision to deny Mr. Rai asylum is based on reasons not supported by the record, that the BIA's decision has to be reversed and Mr. Rai granted asylum. It appears to us that the BIA's stretch of Mr. Rai's misrepresentations are a result to support his adverse credibility finding by making these reasons substantial. But in the context of these proceedings, I don't believe that these misrepresentations can be seen as substantial and to support an adverse credibility finding. First of all, Mr. Rai's misrepresentations did not implicate anything about his experiences in India. They don't go to the heart of his persecution claim. Mr. Rai's misrepresentation was not an attempt to elude INS officials, but instead was his way of trying to present himself before INS officials with an asylum application. Mr. Rai was not elusive about his date and manner of entry when he was confronted with the fact and nothing about the misrepresentation enhanced Mr. Rai's persecution claim to the extent that I didn't understand exactly why he would have misrepresented the year he came in, actually. What advantage was that to him? As it turns out, Your Honor, it was not any advantage to him. It was Mr. Rai's perception, maybe misperception, that his case was hung up when he arrived in the United States in October of 1992, and when he tried to change the venue of his proceedings or waited for word of how to respond to INS, he didn't receive word. And then, ultimately, he decided to apply for asylum affirmatively with INS. And the way he thought he should do that was by not disclosing that he actually came in October of 1992. It was just pretty much a misunderstanding that he had that he thought he might get some advantage. In fact, it didn't help him at all. Yes, he thought it would present him before INS and maybe put him in a position to advance his claim. And it was a mistake on his part, yes, Your Honor. Although I don't know how, but maybe there's some way he could have triggered those proceedings to move forward. Are you speculating about that? Well, Your Honor, this is what Mr. Rai testified to in court as far as the reasons why he did that. Yes, Your Honor. And to the extent that Mr. Rai's attempt to submit himself to the process could be viewed as an adverse credibility factor, I think it's completely mitigated in this case because Mr. Rai's testimony was so detailed, it was so consistent, neither the Immigration Court or the BIA found any flaw in his testimony or even attempted to find a flaw in his testimony. And then Mr. Rai was one of the fortunate asylum applicants who was the beneficiary of corroborating evidence, and the corroborating evidence was independent and direct regarding him, that he is not only who he says he is, but he was a leader in the political organization he stated he was. Mr. Rai also, in his second petition for review, is challenging the denial of his motion to reopen. Mr. Rai's challenge to the motion to reopen here is no less viable. The BIA is required to set forth in a way both positive and adverse factors in exercising its discretion with regard to motions to reopen. And here the BIA did list the factors that it was considering, but it provided no rationale for its reason, which is conclusory in stating that it was going to deny the motion to reopen. So as a result, the BIA's denial of the motion to reopen cannot be sustained. The motion to reopen is based on his post-asylum petition marriage to a U.S. citizen? Yes, Your Honor. And he now has two U.S. citizen children? That's correct, Your Honor. And here the problem with the denial in this case, or the negative exercise of discretion, is more pronounced because the immigration court actually did exercise favorable discretion with regard to discretionary relief for Mr. Rai. And just like in his previous decision, the BIA never put Mr. Rai's misrepresentation regarding the date and manner of his entry into the United States in context. Perhaps the one thing that we can glean from the BIA's denial of Mr. Rai's motion to reopen is that it sort of goes back and correctly characterizes what Mr. Rai did, and it evidences that their initial decision was based on a misreading of the record about his misrepresentations. And, Your Honor, if it pleases the Court, I'd like to reserve the balance of my time for rebuttal. Thank you, counsel. Good morning, counsel. Good morning, Your Honors. Laura Flippen for the respondent in this matter. If I can just respond first to petitioner's counsel has stated that the BIA gave two reasons why it did not find Mr. Rai credible. And the first was the use of the alias for over two years after he entered the United States, including his representation at his initial asylum interview with an INS asylum officer. Petitioner's counsel indicated that it was not true that this misrepresentation was made. The alien did, in fact, use one name when he came into the country in 1992. He used another when he applied for asylum to INS, and he didn't actually even acknowledge that he had used both names until he amended his 1994 asylum application two years later in 1996, both before the immigration court at that time and when he filed an amendment to his application itself. When he came before the immigration judge, before he actually testified, had he, in effect, come clean on these two points? When he appeared at an initial hearing with the immigration judge, Your Honor, in 1996, before the merits hearing, he did not come clean on those points. Okay. My question was, when he appeared before the IJ, before he actually gave testimony under oath, did he come clean? One day before, Your Honor, yes. Okay. So before he took the stand, the immigration judge was aware that he was admitting that he had used the alias and misrepresented his method and time of entry? That's correct, Your Honor. Okay. As to the second point, the misrepresentation the alien made about the date of when he entered the United States, the same would be true that the misrepresentation stood from the time he filed his asylum application until the day before the immigration judge took his testimony. Our law requires that a misrepresentation or a credibility finding must go to the heart of the asylum claim. It can't relate to other matters. What's the government's position on that issue? The government's position, Your Honor, is that it does go to the heart of the asylum claim here. It's distinct from some of the other cases in which the court has found that, for example, there's a typographical error or a date of another family member's entry into the United States that's not relevant. In this case, I think the distinction is that the alien not only misrepresented when he first came into the United States to the officer at the initial inspection in New York, but further misrepresented on his application itself to the asylum officer when he was interviewed by an asylum officer in his asylum interview and continued with the repeated misrepresentation up until he had the hearing in front of the IJ, and that there was a pattern of misrepresentation that I think calls into question his reliability. Suppose he'd had a pattern of misrepresentation on the question of whether he ate apples or oranges. Is it just saying it's mere fact of a pattern of misrepresentation, or is it a misrepresentation about something that is central to the claim? I think had he made a misrepresentation about whether he ate apples or oranges, Your Honor, that would not be relevant. Even though there was a pattern. That would not be relevant. Okay. So the question is why is it – why – Judge Hawkins' question is why is it central to the claim, and your answer was because it's a pattern. It is central to the claim because it is a pattern and because it relates to who he is and his method of entry into the United States, both of which are critical to determining the validity of his asylum claim. He had an explanation for why he used the alias, didn't he, when he testified? He had an explanation, Your Honor. It was somewhat inconsistent. He indicated that he had used an alias because he had been advised that it might be better for him and that he should wait until he got an attorney to make clear who he was. But he also misrepresented that to his attorney because when he filed his asylum application in 1994 with his attorney, he didn't indicate that he had previously used an alias or, for that matter, that his date of entry was actually different. He misrepresented both of those things to his attorney, apparently, because he had counsel when he signed the application, and counsel, I presume, would have – had they known that. I'm still having trouble with the idea of – his claim is that he's being politically persecuted or that he was beaten or whatever it is in this case, that he's a leader of a – or a member of a group. How is it that the statements about when he came into the country relate centrally to whether those events occurred? I think the question of whether an individual is eligible for asylum and whether they have been the victim of past persecution is necessarily bound up in questions that relate not simply to their alleged treatment in the country from which they're seeking refuge, but also to the way in which they left that country, came to this country, and how they have represented the totality of the circumstances in which they find themselves before the immigration court. Well, if we excluded all potentially meritorious asylum petitioners on the basis of how they entered the country, we'd be down to, what, about 5% of applicants? I mean, I've been here almost 10 years, and I think I can count on one hand the number of times an asylum applicant has sought asylum when they were in status. In other words, they come over here on a visitor's visa, and while that is still a good visa, they walk into INS and say, I seek asylum, or they do it at the airport. It seems to me that you'd be chopping off a substantial number of claimants. Well, I think one of the distinctions there, Your Honor, would be that there is a specific mechanism for someone who's out of status to apply for asylum. The difference there would be you would not in all instances, I would presume, have somebody who made significant and repeated misrepresentations. I think to indicate that that's not relevant rewards, frankly, falsification of information to the immigration court. I don't think anyone is suggesting through their questions that it's not relevant. The question is, how does it relate to the merits of the asylum claim? That is the circuit's case law. I do understand the question, Your Honor. The government's position is that it relates to the asylum claim because the question of whether someone is eligible for asylum is not simply their treatment within their country, but the method in which they sought to seek refuge from that treatment, leave their country, and come to this country. And it is a fact-by-fact, case-by-case determination. Certainly there is no, I think, distinct rule that would say simply when someone arrives at John F. Kennedy International Airport that we no longer ask a question about how they got into this country. It depends on the particular case. In this case, the nature of the representation that first he entered with inspection, then he entered without inspection, is necessarily bound up in the veracity of when and how he left his country, including his testimony about which countries he routed through in order to get here. You have about two minutes. Do you want to address the second issue? Yes, sir. Thank you. The second issue, the question of whether the board erred in denying the motion to reopen, the government would submit, of course, that the question before this court on that point is whether the board's denial was an abuse of discretion. And under this court's standard, whether that was necessarily a decision that was arbitrary and contrary to law. The government submits that the board's decision was not an abuse of discretion, that under Rios-Pineda and some of the other cases in this circuit, the attorney general does not abuse his discretion when he denies reopening based upon a violation of law. In this case, a violation of the alien's indication that he submitted under penalty of perjury his correct name, his date of entry. The board in its decision did weigh the equities very carefully, and I think the board's decision reflects that. Wouldn't you think, just assume theoretically for the moment, that the court disagreed with the fact that the misrepresentations he made, disagreed with the board that the misrepresentations were central to his claim? And they proceeded on point two, on the reopening, on the assumption that it was central. Wouldn't the board then want to reconsider, having learned that they were in error on their key facts? I think the board would, if directed by this court, necessarily have to reconsider the credibility determination. But the question on whether the motion to reopen would be granted relies on the wife's petition, visa petition for her husband. The petition is not granted or automatic. It's something that is looked at. He is merely eligible, and there's a phrase in the document that he receives that says he's not guaranteed that. One of the things that ---- No, no, I wasn't suggesting that. I was saying that it wouldn't ñ not that it could be granted now, but that the board, having relied on misrepresentations that it thought were central to a claim, and having, again, this is all theoretical, mis-evaluated the significance of those misrepresentations, wouldn't they want to again look at the question of how they would balance the equities if they gave the proper weight to that? If I can have leave to respond, Your Honor, I see my time is up. Yes. The board would consider that. the character of the petitioner in deciding whether to grant the motion to reopen because the underlying claim is about whether he would be eligible to adjust based on the visa petition, and that involves a question of character. So that would be a factor that I think would be still significant to the board's denial of the motion to reopen. Well, I'm not predicting how it would come out. I just said you might want to look at it again if the ñ all right. That's fine. Thank you, Your Honors. The government would simply ask the court to affirm the board's decisions in this case. Thank you very much. Case just argued will be submitted. Counsel, can you make sure the deputy clerk has your name? I notice on my date sheet she has one of your colleagues. Yes, Your Honor. I will take care of that. Okay. Thank you. Do you have less than a minute? You're entitled to say something. It's not obligatory. No, Your Honor. That's the end of the day. All right. Thank you. The case just argued is submitted.
judges: Reinhardt, Siler, Hawkins